As previously announced, the times will be as allotted to counsel. The first case today is No. 182009, Tracy Lazo et al. v. Sodexo, Inc. Mr. Prisby. Good morning, Your Honors. Before I begin, if I could allot three minutes for rebuttal? Yes. Thank you. It's your preference this morning that I get right into oral argument, or do you want me to skip that portion and answer any questions that you might have? Well, I have a question. You presented two issues to this Court. One has to do with class certification, and the other has to do with the entry of summary judgment on the three individual claims. That's correct. You briefed the class, the denial of class action question first, and then briefed the summary judgment. But in thinking about what was in your interest, I wanted to ask you this question. If you were to lose on the three individual plaintiffs, are you really sure you want the class action question answered by this Court? Not really, Your Honor, no. So I think it was actually going to be my preference this morning to begin with summary judgment. All right. I'm glad we've clarified this. Thank you. Your Honor, we begin with the basic premise that on the motion for summary judgment, we take the evidence in the light most favorable to the non-moving party. In this particular instance, what we have here are three employees of the Sodexo Corporation, all of whom worked as wait staff for Sodexo. Their job duties at both 1 Plymouth Plantation and location Lincoln involved table service, customer service, setting up tables, setting up events. They were responsive to their management, and they were the ones that were directly interacting with what both Sodexo and we described as dining patrons. Under the tip statute, the tip statute actually directly defines what patron is, and I want to take a moment to just go over that. Patron, any person who is served by a wait staff employee or service employee at any place where such employees perform work, including but not limited to any restaurant, banquet facility, or other place at which prepared food or beverage is served, or any person who pays a tip or service charge to any wait staff employee, service employee, or service bartender. I think that when we were discussing this at the district level, we didn't spend enough time talking about who exactly the patron was. In the instance that we have here, where the actual payment for the food service provided and the actual service provided to the person who is consuming the food are different entities, it seems to me you actually have two classes of patrons. You have the people to whom the money is being remitted for the service who are not being served by the wait staff employee, and you have somebody who has entered a function hall who is actually consuming food. The second, the latter half, are the people that wait staff employees are actually interacting with. And no matter what else the tip statute is, it is a declaration by the Commonwealth of Massachusetts legislature that these are people who need protection. But who is subject to the charge that Sodexo is imposing? The people who are subject to the charge would be, for instance, State Street Bank, K&L Gates. They're the ones who are paying that administrative fee. Isn't that the problem for you, though? Even if in the abstract the word patron can cover these people, the way I read the statute is the relevant patron is defined in terms of who is being made to pay the charge and getting notice of that charge, and that's not the diner. So how do we deal with that? Respectfully, I would disagree with that a little bit because the person that we're trying to protect is the wait staff employee. They're not providing service. I didn't say who we're trying to protect. I just said how the statute operates. I thought it was we look to who is being subjected to the charge, the service charge. As you just said, it's not the diner. Right. Who then is being informed of that charge, that's also State Street. So how do we get around that where there's a third party who could, in theory, qualify as a patron, but they're not being subjected to the charge? So under the statute, what's the problem? So the problem here is this is a situation that's a little bit different than what we've seen in other precedent. Take a standard dominoes case. We have one of two of them in this jurisdiction. In that instance, the person who's being subjected to the charge is having a direct interaction with the employee who is presumably supposed to be earning the tip. In this instance, what you have is management of cash. I know what it is, but I'm trying to see, given that's what it is, how can you win? So what we have here is just defining the word patron to include the diner doesn't get you all the way there. Right. As I read the statute, what's relevant is whether the charge is being made to the person who has to pay it in a way that would mislead them with respect to whether a tip is being taken. So let me wind into that argument by just going back to the language of the statute here for a moment. It reads, if an employer or person submits a bill, invoice, or charge to a patron or other person that imposes a service charge, the total proceeds of that service charge or tip shall be remitted only to the waitstaff employees or service bartenders in proportion to the service provided by those employees. So at the gatekeeping level, you have to have an invoice submitted to a patron. In this case, the patron is twofold. Number one, there's a patron who is K&L Gates staff, whoever is setting up this event. Then there is the patron that the waitstaff employee engages with who is actually eating the food. That gets you in the door. In order to qualify for the safe harbor provision in this case, what Sodexo has to show is that they actually identify the administrative charges not being accepted in a way that a patron would know that, okay, I'm not tipping these employees. This money isn't going to an employee. Sodexo's argument is, well, the person who is eating the food is never presented with the invoice showing the administrative charge isn't a tip. So why would that person think that they didn't have to tip? In this case, we have evidence in the form of affidavits that were submitted and are part of the record that suggests that Sodexo employees were informing dining patrons, the people who were actually eating the food, that they didn't have to tip because the tip was already taken care of. So in this instance, it seems like the people who received the invoice with the administrative charge to explain what it was weren't involved in the equation when actual diners... Well, if that's your theory, you're never going to get a class action, right? Because then proving the case, you'd have to show that this particular patron, food customer, was told. And that would be a highly fact-specific that would differ from table to table to customer to customer to plaintiff to plaintiff. So you're going to end up with a case for $300 and be done with it. So let me shift over to that argument really quickly. I don't think that's the case because what we have here, and I know that Sodexo disagrees with this, is a common practice of doing this for whatever reason, whether or not it's to please patrons who are dining or not. We have no evidence that every patron at every location was told it was a service charge. Well, we don't need evidence of every patron at every location. All you need under Duke's amendment of the George case that interpreted that case was that there is a common thread here. And the common thread is this practice by Sodexo of informing people, yeah, we don't have to worry about the tip. But you have to prove it's common, i.e., every customer was told. Or at least many customers were told. Many isn't common. Many means there's one group here and one group here that don't share something in common. You've got to restrict your class to that. But going back to the merits, suppose they, Sodexo, did not put on the invoice that it gave to Kalem I. Gates anything about a service or administrative charge at all. It was just silent. Pretty clear under the statute they wouldn't have to pay any tips. That's right. It doesn't make any difference what the customers who were eating the food thought or didn't think. The trigger here is if they tell Kalem I. Gates, who is paying the bill, that they've got a service charge, the legislature seems concerned that Kalem I. Gates will then think that's a tip for the employees. So the statute says tell Kalem I. Gates that it's not a tip, even though they might think it is one. That's right, except that also remember in this particular case you have two sets of patrons here. The people who want to remit money. But there's only one to whom the bill is presented. The statute is triggered by a submission of a bill, invoice, or charge. Right. The people who are eating the food, as I understand it, Sodexo does not submit a bill, invoice, or charge to any of those patrons. The only patron that it submits a bill, invoice, or charge to, as I understand it, is the party paying for the event. But in this particular case, when you have a party paying for an event, it could be anything. It could be a wedding. It could be a corporate function. Then what we're saying is there is now a carve out in the tip statute where there is going to be no liability if patrons come to believe through the defendant's actions. Well, maybe they have an action against State Street. No, State Street is misrepresenting to the diner that there is a service charge. But State Street isn't employing the employees. State Street isn't employing the employees. Well, then how do you read, I just don't see how you're reading the statute textually to get around the point that Judge Kayada's asking about. If you can't get around that, I don't see how you win. So what's the, the word patron's not going to get you around the problem that we're pressing you on, which is that you have an entity that's being billed. They're being told there's a service charge. There's another person who might be misled. Right. They're not being billed. Right, but they are. So where in the statute is there text that suggests a person who is not billed is relevant? When you go down to patron, there is the last sentence, which is comma, or any person who pays a tip. That's a patron. The person who would be paying a tip is the person who's going to receive the food service. We're all people in this world. We've all gone out to eat. The way this works is people work really hard for less than minimum wage in order to earn the respect of the people for whom they're serving. And you get a bill, and you usually say, well, I'll put 20% on top of that bill and give it to them. These people don't get a bill. Right. In this particular case, these people don't get a bill. So we would then be reading the statute to suggest any time that that doesn't happen. We're not reading the statute. We're asking you, how can you read the statute to fit what you want it to say? That's what we want an answer to. Because I'm focusing on this language. Or any person who pays a tip. That's a patron. The person receiving the food is a patron here. The person also who receives the bill is a patron here. And if we read the statute to affect this outcome where there is going to be no coverage in instances where a separate corporate entity is paying for food service, then we're reading the legislative intent straight out of it. We're not providing any protection for these people who are doing this work. Sodexo can do whatever they want. They don't even need, I guess in that case, to make much of an effort at all to help them with plantation about what the tip is. No plantation isn't going to pay any tips. They're not receiving the service. They're not receiving the food. So in this case, I'm focusing on or any person who pays a tip to qualify for somebody who would actually be a patron in this instance under the statute. But just so I'm clear, that person never is informed that there's a service charge. But under the facts in this record, we have submitted affidavits that said customers have told waitstaff employees, yeah, I was told I don't have to pay anything. And they were told by Sodexo? Yes. I thought the affidavits merely said they were told. The one that Miss Passini, that Passini's affidavit, I believe it's on the last paragraph, says that she knows that management of Sodexo informed customers that this was taken care of. That was in her affidavit. And just, if I can briefly on that because I know counsel is going to attack the affidavit, we're not offering these affidavits for when the truth of the matter is certain. If we did, we would be offering them for proof that the tip was taken care of. These are affidavits that were submitted to demonstrate the mindset of the customer as they were sitting there. You have three minutes. Thank you. Good morning, Your Honors. I guess I will also start out with summary judgment if that's what you prefer. Please. I think the answer to the question with respect to the statute is answered in the definition of service charge, which says a service charge is defined as a fee that a guest would reasonably expect to be given to a waitstaff employee. I don't see how the dining guest could possibly have reasonably expected that the administrative charge was a tip if they never even knew it existed. But I thought the contention is that there's evidence in the record that they did know it existed because CEDACSO informed some of them of it. There are a couple of affidavits. Okay. So just take that as a premise that there are some affidavits in the record that show that. What's your answer then as to why the statute doesn't apply? Well, first of all, they're hearsay. And plaintiffs have waived any argument that it's a state-of-mind exception. They didn't make that argument well. Okay. Move beyond that. Pardon? Move beyond that. I will. If you look at the affidavits, they don't say anything about the administrative charge. These people were told about the administrative charge. I'm going to ask you one conceptual question. Assume that there is a statement in the record that would indicate that CEDACSO was informing the diner that there was a service charge. The bill doesn't go to the diner. The bill that CEDACSO is charging that imposes the service charge goes to State Street or et cetera. But there's evidence in the record that a diner at State Street is informed that there's a service charge. What's your view then? Is there liability or not? And if not, how do you read the statute to say that there isn't in that situation? So we're talking about a situation where CEDACSO told a diner there's a service charge in the bill already that's sent to the back office. Correct. And therefore, you don't need to tip. Correct. I suppose in that circumstance, for that one guest, there might be liability. But that's not even what the affidavits say. The affidavits, I believe, say they were told they didn't have to tip. And there's nothing wrong with having no tipping policy. The SJC has said that's completely lawful. If all they're told is you don't have to tip, there's no problem with that. And there wasn't no tipping policy in the EDR. So as I read the district court's opinion, it wasn't clear to me the district court was of the view that if CEDACSO had told a patron about the service charge that there could be liability. I understood the district court to have made a more categorical ruling about who a patron was, which might suggest we could vacate the remit of the district court to consider that question. I'm not sure about that. I read the district court's opinion the same way. I thought the district court was saying that because CEDACSO told K&L Gates and State Street Bank that evidence is on their body, that they knew what the service charge, I'm sorry, what the administrative charge was, we followed them to safe harbor because they were the only ones prevented with the administrative fee. Now, moving on, apparently I already talked about the affidavits. I mentioned the hearsay issue. I won't bring it up again. And, again, those individuals that are mentioned in the affidavits, there's no indication that they had any idea about the administrative charge in its existence. I believe the allegation is made only by one of the three employees, and the other two do not make any allegation that CEDACSO employees told the diners that the tips were taken care of. I know you say that's inadequate in any event. I'm just trying to narrow this. No, I understand that. And one of the plaintiffs, by the way, in her deposition… Am I correct? Only one of the plaintiffs makes that assertion? I believe it was Ms. Wazow. Yes. I think you're talking about her deposition testimony. And what she also testified was, I think that person knew it wasn't a tip. That's what she said in her deposition. In addition, one thing the plaintiffs seem to be glossing over is that as of September 2015, the EDR did add disclaimer language to the invoices that were sent to State Street and K&L Gates, sort of a belt and suspender sort of thing, even though they had already informed them repeatedly. Yes, but his response to that is, fine, you told State Street and K&L Gates, but you didn't tell the actual diner. And there is some evidence that the actual diner was told, in essence, the tip's been taken care of. Correct? Again, I don't think there is any admissible evidence in the record that that actually took place. And that's not the way I read the affidavits. So this case, in your view, comes down to the admissibility of an affidavit as opposed to the reading of the statute? Well, again, it's only a service charge if it somehow confused these diners. And there's no evidence that the service charge, the administrative charge, confused anybody who was in a position to tip or not tip. As I understand it, for at least one of the sites, for some period of time, there was no written description of the house or administrator's fee disabusing the reader of the possibility that it was a gratuity? Right, that was in the executive dining room at 1 Lincoln Street. And so the statute, your client did submit a bill that had an administrative fee on it in that instance? Correct. Therefore, the statute says that administrative fee has to go to the employees unless. The unless is that your client provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip. Assuming that the patron is KNL or whoever the event organizer is, what happens if you don't give a written description? Can the designation be oral? Yes, it can. What's your authority for that? The Massachusetts Court of Appeals, the Bednark case, we cite that in our brief. There's a footnote in that case that says it does not have to be in writing. As I understand it, the oral was not volunteered simultaneously with the presentation of the bill, but rather arose repeatedly in response to questions from personnel of the event organizer. Yes, there were verbal conversations between the management of Sodexo and KNL Gates and State Street Bank. And the fact that it came up on more than several occasions with the same employer might suggest that in between those conversations, the employer was not aware, i.e., the patron had not yet received a designation. Well, we don't have great detail on those conversations. We don't know if they were just clarifying what it was. Isn't that a problem for you on summary judgment? No, I don't think so, Your Honor. The evidence is that it's underbunded. And by the way, plaintiffs never took a single deposition in this case. And maybe they could have come up with something had they done so. But the reality is the underbunded evidence is that State Street and KNL Gates were repeatedly told, reminded, if you will, that the administrative charge was not a tip or gratuity. And moreover, they're not somebody who's in a position to tip. What matters is what the guest thinks. That's the person who's going to tip. And they never even got the bill with the administrative charge in it. So if I understood your last argument, you are back to where my colleagues started. The guests were never presented, the dining guests were never presented with a bill, and so the statute doesn't apply. That's right, under the definition of what a service charge is. And what about your brother's argument that he's relying on or any person paying a tip? Well, that's the definition of patron. And even if he somewhat fits the definition of patron, it still doesn't fit the definition of a service charge. So that doesn't get him all the way there. Are you giving up the argument that the patron definition isn't met here? No, I don't think it is. I'm just saying I don't think it matters necessarily. But the definition of patron says it's anybody who's actually served food or anybody who pays a service charge or a tip. Now, our position is the administrative charge wasn't a service charge or a tip. It's an administrative charge, which was clarified that it was not a service charge or a tip. So I don't think 10L dates or C Street meet the definition of patron either. But just so I'm clear on this point, if I heard you earlier, your view is that if the record showed that the actual diners at any of these locations had been informed by Sodexo that the service charge had been imposed on the client, State Street, et cetera, that would trigger the statute. So long as the actual diner hadn't been told that the service charge was not in lieu of a tip. Well, it's an administrative charge. That's what it was called. And that's an important distinction under the statute. And the administrative charge, the question is, I thought earlier you seem to acknowledge that even though a diner at State Street is not paying the bill that Sodexo is charging, that if Sodexo informed diners at State Street that there was a service charge, that Sodexo might be on the hook under the TIPS Act. To clarify in that hypothetical, if there was something in the record, I suppose, where 10L dates or State Street said there's this administrative charge. No, no, no, no, no. You've just varied the question. The question had to do with Sodexo's statements to the dining room guest. Not K&L dates and not State Street Bank, which run these private dining rooms catered to by Sodexo. Okay. And I'm not trying to be difficult. I'm just trying to make sure I understand the question. So if Sodexo told a dining room guest that there's an administrative charge in the bill that goes to K&L dates, so therefore you don't have to tip? Just told them there's an administrative charge without anything more. Well, I still don't see how that would confuse the guest if they just told the K&L dates, I'm sorry, told them that there is an administrative charge. Well, that would just turn on the question of whether a person reasonably hearing that there's an administrative charge might think that's a service charge. That's, I thought, the whole way this law works, which is there's a service charge and then there are equivalents that are used. And if you reasonably think that that would count, then there is a problem under the TIPS Act. Well, I'm not sure. I think the administrative charge has to be presented to the guest. And I'm not sure a side conversation would qualify for presenting it to the guest. Well, not being sure doesn't help me 100% with respect, so what's your position with respect to that? They're making a representation about what the record shows, that there were some diners in these places who were told about a charge. It is also the case that the record shows that the bill containing that charge did not go to those diners. So the question is, is the TIPS Act triggered in a situation in which the bill goes to X party, but the person sending that bill also tells Y party, the diner, that there is an administrative charge, because one could imagine that would lead to confusion and trigger the very policy purposes behind the act. So what's the view on that? I thought earlier you suggested there might be liability there, but there's no evidence in the record to support that. I may have understood the question earlier, but the statute says it has to be presented to the patron who's paying a tip or not paying a tip. And even in that scenario, it's not presented to that guest. I don't think the TIPS statute is true. All right. Well, you've taken advantage of the state appeals court decision that says the safe harbor can be done orally. You seem to be suggesting that presentment cannot be done orally. Well, there's appeals court precedent saying the safe harbor can be done orally. Yes, but why sauce for the goose, sauce for the gander? Just because the language of the statute, Your Honor. What language in the statute? It says it has to be presented to the guest, the administrative charge. All right. As a practical matter, would SEDESCO management be in a position that they would be talking to dining room guests? There is a no tipping policy in the dining room, so for that purpose, they may well talk to guests. I know one of the plaintiffs, I'm sorry, not the plaintiff, the appealant said we weren't allowed to put out a tip jar, and that's true. You're allowed to have a no tipping policy. The no tipping policy came from State Street and K&L Gates? I'm actually, I'm not sure, I think it may have come from SEDESCO. Well, you also made a choice not to put any evidence in the record, evidence that was within the knowledge of your client. I'm sorry, what knowledge is that? You, the questions I've asked, you could have covered by putting affidavits in on these questions instead of answering me. I believe the facts are such and such, but you chose not to do that on summary judgment. As to who implemented the no tipping policy? The origins of it, who communicated it, to whom? I apologize, Your Honor, seeing as though it's lawful, it didn't seem relevant to me. And it's lawful because it was never called a service charge, it was only called an administrative charge? No, my point was separate and apart from the administrative charge, it is lawful to have a no tipping policy. And I believe that's what the conversations that the plaintiffs are referencing were really about. You don't have to tip in the executive dining room. It had nothing to do with the administrative charge. Okay. Briefly, Your Honor, thank you. I just want to address that last point first. There's nothing in the record about a no tipping policy. At the very least, this creates a question of fact as to exactly what conversations were going on. Just before you get to, what is the best piece of evidence that you have that you could point us to that's in the record that shows anyone from Sodexo communicated to any diner that there was either a service charge or an administrative charge? There is evidence in the record, as counsel pointed out in Ms. Lazo testifying that this was done. There's evidence in the record. When you say this is done, don't talk passive. Be specific. Okay. That customers who were receiving food were informed by management. You're back to the passive. I'm sorry. That Sodexo informed customers that this was done. Didn't she say that some customer told me that Sodexo told them? That's right. Okay. That's right. And I stand by my earlier argument as to the admissibility of that statement. There is Ms. Passanini's affidavit who said on multiple occasions. So this isn't just a one-off. This is on multiple occasions. She heard the same thing. There's also Mr. Giraffe's affidavit where he testified. He set forth in his affidavit that customers informed him. So how do you get around the hearsay problem? Because we're not offering it for the truth of the matter. Sure, you're offering it to show that Sodexo told diners something. He wants to believe that that's true. The statement that the customer made is that the tip is included. We're not offering the statement to prove that. We're offering the statement to prove the customer's state of mind. And as counsel just told you, the customer's state of mind is paramount here. Customer's state of mind is actually irrelevant. There's no communication to the money, anyone. What's relevant is whether Sodexo presented to them an invoice. You'll need to argue that the presentation could be oral, picking up on Judge Lynch's point that since the safe harbor is law, but you still need some evidence that there was an oral statement to guess that there's an administrative error. And there was Mr. Giraffe's affidavit who said that this statement came from a Sodexo employee. He heard it. That would be an admission from a party. And which one is that? That would be Mr. Giraffe's affidavit. You've just switched statements. We start with Ms. Laszlo, and now you're over to the male plaintiff. That's right. And what exactly did he say? So let me get it up. I thought he said that a dining patron at one of those Thanksgiving feasts had said something to him about no tip is required, and nothing went beyond that. I'm sorry. While I'm on my feet, I misspoke. It was Ms. Passanisi at paragraph 11. During my time at OneLincoln, management told customers that they did not need to tip. They wouldn't let us put out a tip jar because we had already been tipped when the customer paid the bill. She does not say, I heard management say. Again, let's see. Management told customers that they did not need to tip. It's not clear which management is being referred to. If I could just address one more thing on the patron issue. Before you move on from that, that's the best statement you have that would, in your view, be a non-hearsay basis for concluding that Sodexo told people that the tip was taken care of. That's correct. And then the evidence in the light most favorable to the non-moving party, I think that gets us past summary judgment. And have you got something that links up, then, one of the three named plaintiffs to serving a patron who heard that? Yes, Mr. Giraffe's affidavit does that. Just one thing on the patron issue. I'm not sure why I find this as fascinating as I do, but I do. In clarifying what the intent of the Massachusetts legislature meant by patron here, and I think this might help us, if you look actually back at the definition of a waitstaff employee, which under Section A is the first definition that's there, waitstaff employee, a person, including a waiter, waitress, bus person, and counter staff who won, serves beverages or prepared food directly to patrons or who clears patrons' tables. I don't understand that to be at issue, and your time is up. Can I ask you one more question? You're now making an argument as to why you survive summary judgment, which is either good or bad, but assuming it's good, we then get back to the class certification question. Given how you've now identified what the theory is as to why there's certification, the common question that you've identified is solely whether there was a company-wide practice of doing this. That's right. Could you just explain to me the theory as to what the significance of whether there is a company-wide practice is, and why does any member of the class care whether there's a company-wide practice? Is the idea that just proving that alone without any other evidence would be sufficient for a patron to prove that they were subject to that practice? That's right. The statute's unambiguous on this point. If you have a service charge and you don't qualify for the State Highway Prohibition, as they don't at 1 Lincoln, by the way, as counsel just pointed out, there was never any language in any invoice that was submitted, and, of course, there are oral representations, but they come in the form of self-serving affidavits. That service charge must be remitted to the waitstaff. And there are literally hundreds of employees out there who are working hard who aren't receiving money because the person receiving the food isn't... I'm just trying to figure out the existence of a company-wide practice. What would be the relevant proof of that, short of evidence that it was implemented? Because under the TIPS Act, it's not relevant whether they had a practice. The relevant is whether they did something. That's right. So why is that a common question that the class would be interested in, proof of whether they had a company-wide policy I don't follow? If I think that I'm understanding your question correctly, is that in the Interobitaries 135, they do admit that there were service charges charged. They admit that they retained those, and none of those go to the employee, and that, as counsel has pointed out... The common question, then, is what? That they did impose a service charge everywhere? No, that they did impose service charges at their locations. We don't need to demonstrate that it's everywhere for commonality. There may well be some overlap in instances where it wasn't applied at particular locations or it wasn't applied all the time, or they called it a service charge or they called it an administrative fee, but we're not required to prove that at the certification stage. If it washes out after trial and the court has discretion to narrow the scope of the class, that's fine. But I think that the fact of the matter is there was a practice. They did have administrative fees. It did impose them, and the employees are entitled to the person. Are you done? Thank you. Thank you, counsel.